My name is Brad Arndorfer. I represent John Kuchinski. Gary Montana Lawyers to come to Seattle seems to be... Gary Montana Lawyers to come to Seattle is like pulling teeth. Glad to see you're both here. Yes, we made it, your honor. That's good. Directed me to be here and I'm here. With some effort. We're delighted to see you. Let me just start out, first of all, when I was putting the brief together and trying to talk about the issues that came up in this case, and as we're going through this, Mr. Kuchinski presented some moral dilemmas because he came to me from the first instance and all the time through saying, I'm being charged with this, I'm guilty of it, I just want to get this through. But all of these issues keep popping up. And when I was putting the brief together, you know, the last segment that I've got is about the sentencing hearing and the use of pictures and when they were received and how the computer works and so forth, because that created a dilemma for me from the beginning. We have 100, approximately, 100 to 110, depending upon what you look at, of pictures that he affirmatively downloaded, kept for himself, and knew that he possessed. The rest are temporary internet files. There are 109 that are there and a few more in the recycle bin, which are pictures that he once downloaded and then deleted. Right. We count those. Right, and I'm including those. There were 16 pictures left on the computer and he had deleted 94 to 84, depending upon, that were in the recycle bin. Okay. Yeah, and I'm counting those. But you just want to talk about the cache file, the temporary internet. It's what I'm trying to start out with, Your Honors. And, by the way, I apologize. I do want to reserve three to five minutes. But it's what I wanted to try to point out is this whole argument about how many pictures there were and what pictures to use and when they were received and when they were possessed really points to our argument about due process under the sentencing guidelines. With Athenian. And that is, I mean, it's ridiculous. The whole thing seems to fly in the face of logic. When we're talking about X number of pictures means X number of months in jail, it's illogical and violates due process. So why don't we not talk about logic? Why don't we talk about whether indeed, because it seems to me it's a really important issue in this case and I hate to see you bypass it. Whether indeed he can be, those pictures can be counted if he, assuming he didn't, if he did not even know what a cache file was, or there's no evidence that he knows what a cache file was, couldn't access it, didn't know anything about it, and it just automatically downloaded into his computer, if that is true. Well, Your Honor, I think the record speaks to that. I was reviewing the sentencing. He was called and said, bring in your computer, and they presented the testimony that he affirmatively deleted these 94 to 84 pictures and put it in the recycle bin. But he wasn't smart enough to know to empty the recycle bin. He's got 32 files. I'm not talking about the recycle bin. I'm talking about the cache files. Right. And getting to that, I mean, there's 32 folders when there's normally four of cache files. But there's no attempt to erase those. And so clearly, I think that clearly we can say that. You better listen to the question. Excuse me. Try to answer the question. What's that? Try to answer the question. I believe I am, is these cache files cannot be used. I mean, there's no way to say that there is proof knowingly and purposely receiving or possessing what we're viewing on the Internet. Most people, and clearly Mr. Kaczynski did not. Why not? I mean, when you use your browser, you access a Web page, and you look at a dirty picture, right? The picture shows up on your screen. That's what's here, isn't it? Well, my position is the same as the dissent, and that is no. You don't even know what you're going to see before it pops up, and now it's on your computer. The dissent? I'm sorry. Let me see if I can get that quickly. I mean, is what we're talking, is the dissent opinion in U.S. v. Bass, that Tenth Circuit case that we cited, I cited for my authority on this cache issue. I mean, logically, when you go to a child pornography Web site, you know that you're probably going to see child pornography. But why didn't Congress just pass a law that said you can't go to child pornography Web sites? It is illegal for you to view child pornography on your computer, period. Then there wouldn't be an issue. Isn't that what the statute is? No. It's possess. No, that would be the hard drive. Possession would be the hard drive. Right. Viewing would be receipt, the temporary file. No, I, well, and that's a position you can take. I don't see it that way. You don't receive it. You don't receive it as in, how can you receive something and not possess it? You're viewing something, but is that, I don't see that as receiving. I think to receive something means you own and possess it and can keep it and manipulate it and do something. You're watching a television program. Right. You're not receiving the program. I mean, let's say you don't have a TV or one of those things that can record it. And you're sitting in front of your television set and you're watching the television program. Isn't it fair to say you're receiving the program? You're not possessing it. You can't play it again. You don't own it. You don't own the rights to it. But you're receiving it, aren't you? No, I don't believe that's receiving. I don't think that's the definition of receiving. Counsel, do you, from the record, I may not have them. I'm trying to find out if you have a grasp on what technology they're talking about was. It looked to me from the record, if I access a web page, web page doesn't just mean one page. It may have 16, 18 pages involved in it, but it's called a web page. So I access it and I say there's a picture on page one of this web page. And I look at it. And then I log off. Does this record say, it seemed to me to say that I might be misreading it, that the fact that I went to the web page, the computer has now downloaded all 16 or 17 pages into my cache file, in case I ever want to go back all 16 or 17 things that are behind what I see into my cache file, just in case I decide to log on to that web page again someday, there it all is in my cache file. Is that accurate? Is that what the record says? That is accurate. That is how it works. And I may not have looked at the other 16 pages. And maybe I don't even know I can look at them one way or the other. I haven't even looked at those. But it's in my cache file anyway. Is that true? That's true. Okay. So your argument, then, is what? I take it is your argument that therefore, if I don't know about those other 16 pages, then I can't possess them because I have no knowledge of them? Is that the point? Yeah. I mean, it has to be knowingly and purposely possessing and receiving. And, you know, if it's... Clearly receiving requires possession. We know that. It's a lesser part of receiving. Exactly. That's easy. The question is, do I possess those things? You're saying, you're telling me, this is the record says, I'm saying, that I may not know about the other 16 or 17 pages. The question is, can I possess them whether I know about them or not? And my argument is, I mean, clearly you can't be convicted of it. I mean, you can't be convicted of the crime of possessing or receiving pornography you don't know is there. I mean, because it's a knowingly and purposely argument. And so, of course, you know, my argument is that we can't. You know, the argument... What about the one picture you did look at? I mean, let's take just for finesse hypothetical. You go to a web page and there is a picture, and you look at it to your heart's content. And somewhere while you're doing that, your computer is putting into cache other pictures that are all on the same page that you don't look at. Is there any doubt about the picture that you did look at? That's being cached too, right? That's being cached, yes. And any doubt that you received that? And my argument, I mean, that's right back to your previous question. No, you're not receiving it. You're viewing it. But you're not receiving to possess it. Doesn't ROM say the contrary? What's that? Doesn't ROM say the contrary? Doesn't ROM say if you put it up on your screen and look at the thing, whether you download it, whether you actually save it or not, you received it? Isn't that what it says? I'm not familiar with ROM. I'm sorry, Your Honor. Our case ROM, the United States v. ROM, Ninth Circuit. And, you know, off the top of my head, Your Honor, I'm not familiar with it. Well, it seems to say that if you get it up on your screen and look at it, you got it. You possessed it. And that's the gist of my argument in that area is that that's not correct. If ROM says that, then obviously the argument's gone. Well, it's gone certainly as the one you get up on your screen. Right.  I mean, we don't know what amount in the cache has actually been viewed or hasn't been viewed, which, again, leads to the logical argument, why doesn't Congress pass a law saying it can't view them instead of possessing it? The logical, to me, is possessing it. Well, you know, the suggestion that Congress could pass better laws is sort of a waste of your time. We have to deal with the laws that Congress did pass. Right. And either your client is or is not guilty of those. And, you know, the fact that Congress could have done something better, you know, I'm sure we can all hypothesize Congress could do all sorts of things better. But you're just burning up minutes for no good reason. Do you want to talk, if you're done on this point, do you want to talk about the multiplicity issue? Yes, Your Honor. But, you know, really, before you even have to get to the multiplicity, if you don't mind, I would like to talk about that plea agreement issue. I was just before going to that issue, if you don't mind. You're going to lose on that, but go ahead. I'm telling you something that you might actually make some headway on, but you go ahead and, you know, it's your time. Well, you know, the Fagan case that we cite, as opposed to the case cited by the government, you know, really seems to be quite opposite from each other. And that is, I mean, in the Savage and the Alvarez, I can't even pronounce the last name, talking about being binding. You know, and here's the big distinction I want to make. Fagan says the government has an obligation when a plea agreement, which is a contract is signed, to present that to the court. They can't back out of it. I mean, it's not binding on the parties until the judge accepts it. That's true. But it is still binding between the parties to present it to the court. Neither party can just say, oh, I don't want to do the plea agreement. It's not binding until the judge signs it. That isn't logical. And I think there has to be a decision made to justify what Fagan is saying. Well, the judge looked at this and said, look, you don't have a meeting of the minds. That's it. So the judge did look at it. It says there's no meeting of the mind. And so I don't accept that. I don't know why you're arguing about some situation where the judge hasn't even seen it. Because to make that argument, you have to make the leap that, yes, they can't I mean, just unilaterally say it. No plea agreement, you don't have it. When he says there wasn't a meeting of the minds, he's wrong. The government presented a list of here's the elements. My client is up there before the judge saying I violated, every one of those elements is true. I'm guilty of this offense. There is no plea agreement on sentencing. There was a meeting of the minds. You are going to plead guilty to possession and will dismiss receiving. And he did do that. There was a meeting of the mind. The fact that we had these issues about whether or not it fell under the protect act or not are all sentencing issues. They didn't Unless, it seems to me our cases say, do they not, unless there's a cognizable actual change of position to his detriment, plea agreements are not binding, in fact, until the court proves it. I totally disagree with you, Your Honor. That's not good law. Contract A binding, I think I can withdraw from it. Well, I Can you think of something else in contract law where Yeah, absolutely. Contract doesn't bind me. We have a plea agreement and the agreement No, no, no. Can you think of something else in contract law where, principle, we have no binding agreement, yet I must adhere to it. Tell me about that contract. Okay. Real simple. Okay. They agree to dismiss count two. Before the judge accepts it, I can't make them or tell them or have them do anything. The plea agreement, when it is signed and filed with the court, is an agreement to present that to the judge. And it is binding on both parties as far as the duty to present that to the judge. You can't Well, that, I mean, before you have to get to the meeting of the minds, you have to agree that it's binding. I mean, she would have to, for no reason. Those are antithetical concepts, Constable, I'm afraid. Well, and you know what I'm saying, binding It's rather antithetical to say we have a binding non-meeting of the minds. Well, we don't have to worry about meeting of the minds. If what you're saying is that, I mean, they can unilaterally at any time You know, you're down to less than four minutes. You're going to lose on this issue. You can keep talking. Well, I do see that I'm about out of time. I can predict to a fair degree of accuracy you're not going to win. Now, do you want to talk about the issue you might win on, or do you want to just sit down and save your time for a little I mean, the multiplicity issue, to me, just is clear. It's very important, because I know that you'd save it for last. And it is. And I see I'm running a real short of time. But, you know, the honor, the multiplicity issue is if you read the indictment in this case, the indictment is that these were received using a computer. You can't possibly possess child pornography without receiving it. The only other way to do that is to manufacture it yourself, which is another statutory violation. Counsel, how do you get beyond the Supreme Court cases, and our cases, by the way, that say, for example, you can't receive a gun without possessing it, but you can be prosecuted for both the greater and the lesser offense. And the government can go forward. It can try them to a jury. It can do everything except it can't, at the end of the day, sentence you on both. Now, your argument to us is nothing about sentencing. It only says something about can you proceed with the charges and try them. How do you get around the cases that say, yes, you can try something on both the greater and the lesser. He can plead to one and you can try them on the other. It doesn't matter. What do you do with that? Well, Your Honor, I would agree that those cases would apply, but not if every single element is there. I just can't see if it's every single element. How about receiving and possessing a gun? I don't see much difference. I says you're right. I don't see much difference between possessing and receiving a gun. You can't receive a gun without possessing it. You can't possess it without receiving it. I think you're right. What do we do with the fact that the Supreme Court and we have said you can prosecute you on both all the way up to sentence. You can't send you on both, but you can prosecute you all the way up to sentence. What do you do with that? I can't distinguish between a gun and child pornography. I can tell you that. I mean, I just don't see that. So what about sentencing? Well, the problem in this thing, in the sentencing, is if we aren't using those cash files, none of that falls under the Protect Act. We don't have that five-year mandatory minimum, which is a huge thing. I'm not sure what you just said. Well, I see I've only got a minute left. What I'm trying to say is that my argument that I made before is on 265 of the transcript. The argument that I made, and I'm trying to make, that I made to the district court is on 265 of the government's excerpt of transcripts. And that is that all of the testimony was, all of this stuff was received prior to April 30th of 2003. And those are the facts. So, I mean, all of it fell before the Protect Act came into being as far as receiving. There is no proof that he received anything after April 30th other than cash files. That's what I'm trying to argue. I see. So all the files he downloaded before are the cash files afterwards. There were cash files afterwards. Which indicates to us he viewed at least some pages afterwards. That's correct. Because otherwise you don't get the cash files dated later. So he must have been going around viewing other things. He was still, without any doubt, after we received the second set of discovery, without any doubt, he was still viewing child pornography sites after the Protect Act. So how does this deal with the multiplicity argument? So the multiplicity argument goes back to if this is a sentencing issue, I mean, then you're going to have to look at the Cash Act and say that there's this, the receiving portion was before the Protect Act. We don't have any proof that there was anything received knowingly and purposely other than cash files after the Protect Act. All of the pictures in the recycle bin and the pictures that he had on the thing all have dates preceding the Protect Act. The 110 pictures. And that's what I'm saying. Okay. Okay. Thank you. We'll hear from the government. Thank you, Your Honor. Good morning, Your Honors. My name is Marcia Hurd, and I'm an assistant U.S. attorney for the District of Montana. And I am pleased to be here today. We're hoping this rain goes that way because we're in short supply. I hope you didn't have to hitchhike. Well, I took a cab this morning to get from the hotel because it was coming down like we don't usually see rain in Montana. I was interested when we got this not submitted on briefs to see what you were interested in in this case. And it's obviously not the plea agreement because there wasn't a plea agreement. It's not the issue about reservation of the right to appeal under Rule 11A2. And it's obviously not the Booker and Protect Act and Feeney Amendment argument. So you've zeroed in on the two arguments I think that are really the most important here. The first is the receipt and possession in terms of the temporary Internet files. And the second is the multiplicity argument. And they relate into each other because they both feed into the sentencing process. They do. And interestingly enough, of course, at the time we wrote the briefs, ROM had not been decided. And I submitted ROM as supplemental authority later on after the briefs were submitted because it went a long way towards this issue of is it illegal to view, i.e., look at child pornography via the Internet. And I think ROM clearly says that viewing child pornography is receipt. That is the point of looking at child pornography. It's like having a beautiful picture that you look at to enjoy. For pedophiles, that's what child pornography is there for. It said that, but it also was very careful to point out that the evidence demonstrated that ROM knew about the cash files. Correct. And knew how to manipulate them and knew how to get into them and could pull things out of them and put things in them. And it seemed to make a big point of that. It did. That's what's difficult. Well, and I think what the difference is in ROM is they were having those discussions in the context of did he knowingly possess. He would go to a website, click on an image, and sometimes would look at it for as long as five minutes, would sometimes make it larger than it appeared. And there's this whole discussion in ROM about how he manipulated the image that came in that he received from the website, not always the image from the temporary Internet cash files themselves. So he's manipulating, you know, if it was one of us, the Eddie Bauer catalog or the state line TAC catalog. Let's look at this picture of a saddle but bigger. I really like that. I'm going to print it and I'm going to save it because this is what I want to buy. But he also knew that there were cash files and there was stuff downloaded there and he could get at it, he could delete it or he could pull it out, he could do it. He knew all that. He did know that. He made a big point about his knowledge of that. Right. This is why we don't have any evidence of that. Exactly. What we know about Mr. Kuczynski is that on 90-some different occasions, he attempted to purchase child pornography websites, access to them. He was successful on somewhere under 30 purchases of child pornography websites where he would subscribe and then was able to go look. We know that he had a grand sum total of approximately 19,000 images. It was three notebooks full of images of child pornography that were in his temporary Internet cash files. And we know that over a period of almost a year, he looked and looked and looked at child pornography. And the difference between ROM and all those discussions were about possession. In this case, I think that you hit the nail on the head, Judge Carney, in that we're talking about receipt. And the government has always said when you go to a child pornography website knowingly and you ask for child pornography images to come in, you are knowingly receiving child pornography, which is different than in ROM. And that gets to your multiplicity. Right. By definition, that's why possession is kind of a lesser included offense of receipt in one sense because you ain't going to receive it unless you possess it. Well, and that's kind of the good question. When you really kind of stop and look at this issue, and I think that your comments were particularly important in terms of what's the harm here, what's the foul, Judge Fernandez, because the cases say you can, if you want to consider these to be a lesser included. Mr. Puchinsky's argument is that receipt, the 5- to 20-year charge, is a lesser included of possession, which is the up to 10, which to me makes no sense. Well, that's absolutely reversed. We know that. Right. Anyway, one's a lesser included of the other. Well, and that's the question that was left specifically unaddressed in ROM. In ROM, the footnote on footnote 15 says, he raised a multiplicity argument at the trial court level, and he lost on that, and he has not raised that on appeal, so we don't have the chance now to address that issue. I'm sorry, but what about the Supreme Court cases that say you absolutely can prosecute the greater and the lesser. There's just no question about that. Exactly. You can prosecute the receipt and the possession. Exactly. What you can't do at the end of the day is wind up with judgments of conviction and sentence. This Court did. He doesn't seem to be arguing that, but this Court did that, obviously. That really is wrong, isn't it, if somebody raised that? No. The sentencing issue in this case, you use the same guideline for receipt and possession, 2G2.2. No. All I'm saying is it just is wrong to leave a person with two judgments and convictions on those two different things. Understandable. If somebody would raise it in front of us, we'd certainly have to say that's no good. Now, maybe he did, maybe he didn't, but the point is that's just plain wrong, right? Right. You can't have two ultimate judgments and sentences. You can't. If you conclude that these are one is a lesser included of another, if you include the possession is a lesser included of receipt, then you're absolutely correct. In this case, the judge denied the multiplicity argument and therefore sentenced him on both counts, but to run concurrently. So you're correct. That issue specifically didn't get raised, though. Do we know if the images to support the possession charge were the same images to support the receipt charge? Well, it kind of all got melded together at sentencing in terms of the number of images that were in, that had been saved and then dumped into the recycle bin directly before the FBI talked to him, the number of images that were still there on the computer, and then the over 19,000 that were in temporary Internet files. And the judge just basically said, look, I'm looking at three 3-inch binders completely full of child pornography. This is way more than 600, which is the top guideline enhancement. There is no doubt in my mind that this guy had more than 600 images. Would you agree, though, on the 100 that were on the hard drive, they shouldn't be used to support a receipt conviction, just the possession conviction? Unless I can prove specifically when those were received. And in some cases, if it became an issue, most of the cases that I deal with in the District of Montana, we have thousands of images, and so the over 600 is not an issue. But if we had a case where we only had 25 images or we were right at the cusp of the change in 2G2.2 to go up a point or down a point, we would want to know, can I prove exactly when those were received and then how long he continued to possess them? The problem with the multiplicity argument that I see is that you must prove a knowing receipt and a knowing possession for those two separate offenses. So I've actually had defendants who have gone out and looking on the Internet for adult pornography, stumbled across child pornography, so didn't knowingly receive it, said, I'm looking for adults, and then went, oh, hey, well, maybe I'll save these. And that is possession. But it's not a knowing receipt. And so we have to be careful about just automatically saying that one is a lesser included of the other. I've got another case where I'm charging the guy with possession because he actually received the CD in another state at another time and then just took it with him when he moved. Well, you're arguing two different things. You're saying, well, if anybody raised it, yes, these things would be multiplicity, but you can't have both. Now I hear you arguing the opposite. What would be your answer if, indeed, opposing counsel were to use whatever time he's got left on rebuttal and said, yes, I do raise this argument now? He actually did raise the argument below. He raised he pled to count to. Then we have the stipulated facts. So what's your answer? So let's cut. Cutting right to the chase, I don't believe they're multiplicities. Okay, explain that. I believe that, especially with regard to receipt and possession, you can have one without the other. You can receive a videotape that you've ordered and then go, I really don't want this. I don't want to have anything to do with this and throw it away. And the proper charge for that is knowing receipt. Or you can, like in my other example, you can be looking for adult porn, get some child pornography in and go, hey, I think I'm going to save that, and you have a knowing possession but not a knowing receipt. How about in this case? The images on the temp file are receipt. Absolutely. The images on the hard file are possession. Absolutely. Because in this case, you're right. It's different than ROM. There's no evidence that he went in and manipulated any of the temporary Internet files or knew that he could. But those are clearly received. He paid for access to go to those child pornography websites. But that's the question I was trying to ask. Right. He goes to this webpage, and it's got 16 things attached to it. He looks at picture one. Simple, yes, knowing. But I don't know what that tells me that he knows that now that's all been received by him and downloaded into his computer. Well, he knows at least that when he searches for naked little children and goes to a website that gives, you know, those kinds of pictures, and he starts looking at them, he's knowingly receiving them. Because if he didn't want them, he could search his computer. Well, he's looked at one of them, let's say. But he may not know there are 10,000 thumbnails behind them. Well, correct. And in this case, we have evidence. He may not know there are 10,000 thumbnails behind them. Right. We have evidence that he continued regularly, daily, to go to those websites, access them over and over and over. Answer the question. I'm trying. Speak up loud. What's so difficult about listening and answering the question? What if he doesn't? He sees the one. Yep, that's what he does. And that's the greatest little piece of porn I've ever seen. He doesn't know there are 10,000 behind them. And those all wind up in his cache file. Now, why is he knowingly received the other 10,000, even on your theory? Well, because I think that when you go to those sites, you're knowingly receiving however much material comes in. And what we don't know in this case. You said comes in. You're saying you're knowingly receiving it, even if you don't know it's there. So if I walk into a store, I'm knowingly receiving everything in the store, even though I don't know what's in the store. Well, if you're sitting and watching a movie, that's probably a better analogy, is that you certainly see the part that you watch, but if you get up and go to the bathroom and you come back, you didn't receive that part. And so I think there's a little bit of a difficulty here in terms of saying, well, all 19,000 were knowingly received by him because of that whole issue. Well, if there's a difficulty, then that's the difficulty that counsel seems to be putting his finger on. In some fashion. And the way the district court judge dealt with it was by saying, you went over and over and over to these sites. But we don't know how many times. For all we know is he went once. No. The temporary Internet files are dated over a huge, long period of time. We know that he continued to go, continued to go, continued to go. More than 600 times? Absolutely. There was a huge period of time where he was. You say absolutely, but I'd rather have a yes. Yes. He was a very. How do you know? Because of. Where on the record is that? The computer testimony at the sentencing number one, Mr. Kuczynski's own admissions to the sex offender evaluator. That evaluation is part of the record, the sentencing record. It was sealed for your consideration. And he talks about in there all the different times that he went to these sites. The test. He mentions more than 600 times? No. He doesn't specifically talk about 600. The 600 comes into account because that's the highest guideline enhancement. You get a five-point bump. I understand the significance of 600, but you have to go over 600 to say it doesn't matter. So he has to have access a porn site on 600 separate occasions for you to say it doesn't matter. There are more images there. And the question I'm asking. I see. Just listen to the question. Listen to the question. Do we have evidence that he went in more than 600 times or 600 of them dates? I don't think that was specifically addressed. No. Okay. So why is this at least a remand? A remand to determine the specific number of items received. You have agreed that you could go in one day, view one image, and create 100 files in the cache. We could, but we don't know that in this case. Would you just listen to my question? Just listen, okay? You agree that you can go in, you can watch one image, and that your computer will download 100 other things that are on that website. Yes or no? We don't know. We don't know if that happened in this case. We don't know if he looked at every single image that came in. We don't know if he can. It's possible. Okay. So did you understand my question? Right. Okay. Is the answer yes, no, I don't know? The answer would be in this case, we don't know. We don't know that you can download more than one image. Right. Because what we didn't do is reconstruct, because you can reconstruct sometimes out of the DAP files at the very beginning of. . . Do you understand what I'm saying when I say can you do it? Right. I'm trying to explain it to you. What about this record? Just listen, okay? Listen. I don't know why I have so much difficulty with counsel from Montana listening. You can view an image, and your computer can download other images on that website. It's possible, yes. Okay. Boy, that was difficult. Okay. And you can do that, and presumably with going in one time, if there are enough images on that website, you could download 100 or 200 or 300 images, none of which you're aware of. It's possible. Okay. So what we do know is different dates. If you do it on different dates, then we know that you've at least gone in and viewed at least one image on one date. Yes. Yes or no? Right. Do we have more than 600 dates? That record was never made in this case. So the answer is no? We don't have that on the record, no. Listen to me. Do we have more than 600 dates? Yes or no? My problem is in telling you what I know about the case versus what's on the record. Yes or no? Do we have more than 600? On this record, no. Well, of course I'm not asking about the record on a different case. Well, I'm talking about what I know. I'm talking all my questions concern this record in this case. Right. And the judge did not make that record. Do we have more than 600 dates? The judge did not make that record, no, because we didn't ask that question. Okay. Well, I'm glad you're admitting fault in this. Maybe you should have asked that question. So given that we don't know that there are more than 600 dates, do we have any way of knowing for sure that there were more than 600 knowing viewings of images? What we would have to do is go back and make a specific record. Is there a way of telling that you have more than 600 actual viewing of images? Not on this record that we have. That's all we've got here. We would have to go back. We don't have a record on another case. Right. We're talking about the record that we now have presented to us. Correct. And on this record, I can't stand up here and say that. He got a kick up for having more than 600 images. Right. So this makes a difference. It makes a huge difference. You're confessing error, essentially, of saying that that is not supported by this record. Is there some other way you can support the more than 600 images? Well, first of all, it didn't get presented this way by the defendant. So that's why the Court didn't address it and I didn't address it. He said this is the reason. I don't want excuses. I don't care about excuses. Is there some reason why this is not a remand, why this is not essentially a confession of error? Because the judge made a factual finding that this defendant received and or possessed over 19,000 images. It was a factual finding in the pre-sentence report that the defendant did not object to, that the Court adopted, and that's what's in the record. Counsel, can I ask you a question, just following up a little bit on what Judge Kuczynski was asking you? I go to a Web page and it says on the front, these are the most Jim Dandy pictures of 6-year-old girls that you ever saw. That's what it says on the page. Sure. And I say to myself, you know, I really like girls between 7 and 8. And so I now log off of that site. I observe the first page of the Web page, no question about that. Has that downloaded into my cache file? It strikes me from what I've been told it does. It ain't a picture there, it's just a thing, but all the backup pictures have downloaded too. It depends on how long you're at the site. If you decide really quickly you don't want there and you use your back arrow to exit out, the rest of the page doesn't. I'm there for a long time. I'm reading this thing and I'm brooding on it and saying, you know. And you get a telephone call in the middle of it. It could very well. And so I haven't even viewed a picture that day, the whole thing just in my cache file. The whole thing could download to your temporary Internet files, yes. Right. And I haven't even seen a picture. So that's not a day I received a picture, that's a day I read all this stuff and I brooded. You know, I've never liked six-year-olds. I like, you know, my thing is, and that's how these people tend to be. They tend to be very specific in time frame. Yes. My thing is seven-year-olds. I don't like six-year-olds. And, well, maybe I can. So down it loads and I go off and I've never seen a picture. Then I couldn't prove that you knowingly received child pornography, even though it's in your temporary Internet files. I would want to look at what was your search term. Precisely. And that's what we did in this case, is to make sure it's a knowing receipt. We looked at his search terms. We looked at the child pornography websites that he purchased access to. We looked at all of those things in the analysis, in terms of the computer analysis itself, to make certain this is a knowing possession. This isn't somebody who's wanting an adult website. Give me a for example. Give me a for example. When you say you made sure, like what's for example? The example is when we do a computer analysis, as we did in this case, we have the forensic analyst look for specific search terms. What was he Googling? What was he using? Where was he going specifically? Because you can figure out what they type in, www. You're repeating yourself. I understand your general explanation. Give me a for example. For example, in this case, is that he used search terms that he even admitted, like little girl sex to look for pictures, or naked little girls to look for pictures. Those, when you get those kinds of searches, and you get the websites that come with them, those are knowing possessions. He puts in naked little girls, and the wrong age comes up. You're still looking for naked little girls. But he's not looking for 6-year-olds. He's looking for 8-year-olds. But that's like saying, I wanted really good cocaine, but I only got kind of middling cocaine, so I'm not possessing. He's saying, you're saying that that proves that he knowingly received the 6-year-olds. And he, when it comes up on his web screen, he says, I don't like 6-year-olds. I don't want that. But you're saying because he asked for naked little girls, he knowingly received 6-year-olds. That's the jump you're making. Well, I don't know that I think that's really a jump. If you're using that search term. That's your logic. Let me put it that way. Right. That's my logic, that you're using that search term, and you're going to get what you asked for, which is pictures of naked little girls. Child pornography doesn't define. But you could get a page that says this is a page for 6-year-old girls with no picture at all. You could put in naked little girls, and you get in a page that says if you go in here, you're going to see the cutest 6-year-old girls you ever wanted. And then the guy says, no, I don't think I'm interested. Too young for me. And right at that point, he gets a phone call. He goes to the bathroom. What's up? He leaves the computer on. It's sucking up all of those images, right? Into his temporary Internet files, cache, you bet. Without ever having actually viewed a picture. Without ever having specifically the search term doesn't help you any. Right. Tell you whether or not he downloaded a particular picture. Right. Interesting technological case. How does this interplay with the multiplicity argument? Because remember, you can't have him be convicted and sentenced for both, right? Correct. Your position is they're not multiplicitous. That's my position. But I think you're right. If you do decide that it's multiplicitous, then the court would have to remand and ‑‑ If you just look at the language of the statute, it's hard to see why they're not. They track in every way except one says possession, one says ‑‑ Now, your view is that you can possess something without receiving it? Without knowingly receiving it. Because somebody could hand you an envelope that you don't know has dirty pictures of little kids in it. And you go, okay, whatever this is. And then you open it and you go, oh, I really like this. And I'm going to keep it. You didn't knowingly receive it because you didn't know what it was. But you certainly decided to keep it and not throw it in the garbage. And that's a knowing possession. Let's see. If you open it up and you throw it in the garbage, then in your view you're not guilty of either. No, I believe, you know, unless you keep it for two or three weeks and carry it around and, you know. I'm just saying, if it gets handed to you, you open it up and you just look at it long enough to realize this is not something I want. Exactly. Then that amount of time you actually have in your hand while you are getting rid of it, that doesn't count. No, it doesn't count. Okay, I understand. Okay. Thank you. We'll give you a minute. Okay. Just briefly, you were asking Ms. Hurd about proof about how many times you went to websites. There actually is some proof in that respect. If you go to 224 of their excerpts, Mike Mayotte, the expert, was talking about cookies. When you go to a website, a cookie is there. She did say that this was in his pre-sense report and he admitted it. He didn't object. It said 90,000 and he did not object. And that's how we usually work. Well, he had no idea. He didn't object, nor did he concede. He just didn't object. He didn't know how many. I can tell you that. I mean, there's nothing in there affirmatively to say. You say it with such disdain, but that's how we normally work. You've been involved in sentencing at district court? Have you? What's that now? Do you do that kind of thing, sentencing? Do what? District court work. Yes, Your Honor. I mean, we have appellate lawyers who have received district court, which is fine. I'm just wondering whether you. But I think the way it works in district court, and Connie can correct me if I'm wrong, is that the judge looks at the pre-sense report but usually doesn't focus in on any one provision, particularly, unless one of the sides says, hey, I object to paragraphs also. And when the party says I object, then you maybe have a hearing. But there was no objection in this case, right? You're wrong. No, I disagree with that totally. We made our objections in all kinds of motions. We made our objections at the sentencing hearing. Did you object to the 19,000? Yes, absolutely. I mean, we continuously argued that that wasn't possession or receipt, nor did it fall under the PROTECT Act. All of those are the issues that we have before this Court. Your Honor, there was an exhibit admitted into evidence that talked about how many times there was cookies. I don't know. There was no testimony or legal description of how many or how many places. But just in a concession, I just would tell you that there is some evidence of how much he went to websites and how many times, and that would be in the cookies area. And there was an exhibit admitted and a discussion of that on page 224. The other issue that I wanted to talk about was reserving the duplicity argument. I don't know quite how we can not have reserved it when we filed our ‑‑ we pled to the count. We made our motion to dismiss the other count. Throughout the entire thing, we argued that he couldn't use receiving once we pled to possessing. I understand that there's a nuance between conviction and actual sentencing, but I do argue that we have preserved that issue. And lastly, you know, I want to point out to the Court just one last time how ridiculous this whole issue of how many pictures and whether they're cached or whether they're possessed. At this time, you could do it, but you are out of time. Thank you. Thank you, Your Honor. We just argued. We'll stand a minute. We're adjourned. All rise. The Court for the second stand adjourned.
judges: Kozinski, Fernandez, Carney